UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JOHN GALIPEAU, et al.,<br><br>　　　　Defendants. | CAUSE NO. 3:20-CV-640-MGG |

OPINION AND ORDER

　　　Christopher A. Stanton, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Warden John Galipeau, Captain Gary Lewis, Unit Team Manager John Salyer, Unit Team Manager Philip Sonnenberg, Deputy Warden Kenneth Gann, and Housekeeping Supervisor Karen Johnston "in their personal capacities for monetary damages for denying the plaintiff adequate sanitary living conditions by keeping him in a cell with black mold, in violation of the Eighth Amendment[.]" ECF 33 at 6. Second, he is proceeding "[a]gainst Warden John Galipeau in his official capacity for permanent injunctive relief related to providing the plaintiff with adequate sanitary living conditions regarding the presence of black mold in his cell, as required by the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment, arguing they did not violate Stanton's Eighth Amendment rights. ECF 52. Stanton filed a response and the defendants filed a reply. ECF 56, 57. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Id.* Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable

2

refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). In other words, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quotation marks omitted).

Stanton is proceeding against six defendants for violating his Eighth Amendment rights. Each defendant will be addressed in turn.

*Unit Team Manager Sonnenberg*

Unit Team Manager Sonnenberg attests to the following facts: Unit Team Manager Sonnenberg was the complex director at Westville Correctional Facility ("WCU") from June 12, 2020, through early 2021. ECF 54-2 at 1. At some point in mid-2020, he spoke with Stanton and learned of his complaint of black mold in his cell. *Id.* at 2. In response, Unit Team Manager Sonnenberg asked Housekeeping Supervisor Johnston to conduct a deep clean of Stanton's cell. *Id.* at 2-3. Housekeeping Supervisor Johnston reported back that she had accomplished the cleaning and had not seen any mold, but had nonetheless cleaned the toilet with bleach. *Id.* at 3. On October 21, 2020, Stanton informed Unit Team Manager Sonnenberg in writing that housekeeping's

3

cleaning of his cell had been ineffective and the black mold was growing even faster. *Id.*; ECF 54-9. In response, Unit Team Manager Sonnenberg spoke with Housekeeping Supervisor Johnston and asked her to clean Stanton's cell, check the toilet, have porters clean it with bleach, and report back to him. ECF 54-2 at 4; ECF 54-10. On October 27, 2020, Unit Team Manager Sonnenberg spoke with Stanton in person, and Stanton asserted only chlorine could kill the black mold in his cell. ECF 54-2 at 4. Unit Team Manager Sonnenberg told Stanton housekeeping would clean his cell, but his request for chlorine could not be accommodated so bleach would be used. *Id*. In late October or early November, Housekeeping Supervisor Johnston reported to Unit Team Manager Sonnenberg that she had brought porters to clean Stanton's cell and had not found any mold, but had nevertheless deep cleaned the cell and used bleach to clean the toilet. *Id.* at 6. After that time, Unit Team Manager Sonnenberg received no additional complaints from Stanton. *Id.*

Here, the undisputed evidence shows Unit Team Manager Sonnenberg responded reasonably to Stanton's complaints of black mold by instructing Housekeeping Supervisor Johnston to deep clean his cell and clean his toilet with bleach. While Stanton attests porters only cleaned his toilet on one occasion and his cell was never actually deep cleaned (ECF 56-1 at 2), he does not dispute that Unit Team Manager Sonnenberg instructed housecleaning to deep clean his cell and was informed the cell had been deep cleaned. Moreover, while Stanton argues that bleach was insufficient and his toilet should have been cleaned with chlorine, it is undisputed Unit Team Manager Sonnenberg did not have access to chlorine and, regardless, Stanton

4

provides no evidence Unit Team Manager Sonnenberg knew or should have known bleach would be insufficient to clean the toilet. *See* ECF 52-2 at 6 (attesting that "I believe that if mold were found in a metal toilet of the sort in the WCU cells, that bleach would be the appropriate means of cleaning the mold"). Based on this evidence, no reasonable jury could conclude Unit Team Manager Sonnenberg acted with deliberate indifference to Stanton's health or safety by instructing housekeeping to clean his toilet with bleach.

### *Housekeeping Supervisor Johnston*

Housekeeping Supervisor Johnston argues she was not deliberately indifferent to Stanton's health or safety because she deep cleaned his cell when she was instructed to do so. ECF 53 at 14-15. Specifically, Housekeeping Supervisor Johnston attests that, shortly after receiving Unit Team Manager Sonnenberg's October 26 email, she brought porters with her to Stanton's cell to conduct a deep clean and scrubbed the toilet with bleach, but did not find any evidence of mold. ECF 54-3 at 4-5. Stanton responds that Housekeeping Supervisor Johnston did not personally come to his cell and that porters never "deep cleaned" his cell, but rather a porter wiped his toilet with a handful of paper towels. ECF 56 at 1-2; ECF 56-1 at 2. But Stanton does not dispute that Housekeeping Supervisor Johnston either brought or sent porters to his cell, and that the porters inspected his toilet, did not find any evidence of mold, and wiped the area with paper towels. While Stanton may disagree with Housekeeping Supervisor Johnston's cleaning method, the fact that either she or one of her porters inspected and attempted to clean the alleged mold shows she acted with at least some concern for

5

Stanton's safety. Therefore, based on the undisputed evidence, no reasonable jury could conclude that Housekeeping Supervisor Johnston was deliberately indifferent to Stanton's safety. *See Duane*, 959 F.2d at 677 (Deliberate indifference is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks"). Summary judgment is warranted in her favor.

### *Deputy Warden Gann*

Deputy Warden Gann argues summary judgment is warranted in his favor because he was not personally involved in, or deliberately indifferent to, Stanton's complaint of black mold. ECF 53 at 8-9, 16-17. Specifically, Deputy Warden Gann attests to the following facts: Deputy Warden Gann never spoke with Stanton about the black mold and first learned of Stanton's allegation of mold in passing from other staff at WCU, after the issue already had been resolved. ECF 54-6 at 2-3. Specifically, Deputy Warden Gann was informed housekeeping had not substantiated Stanton's allegation of black mold, but had nonetheless deep cleaned Stanton's cell and cleaned his toilet with bleach. *Id.* Deputy Warden Gann did not hear anything more related to Stanton's complaint of black mold. *Id.*

In his response, Stanton argues he submitted request forms to Deputy Warden Gann regarding the black mold in his cell. But Stanton does not dispute that Deputy Warden Gann was informed that housekeeping had deep cleaned his cell and resolved the issue. Because it is undisputed Deputy Warden Gann was informed Stanton's complaint of black mold was adequately addressed by housekeeping, and there is no evidence Deputy Warden Gann had any reason to doubt that information, no

6

reasonable jury could conclude he was deliberately indifferent to Stanton's health or safety. Summary judgment is warranted in favor of Deputy Warden Gann.

*Unit Team Manager Salyer*

Unit Team Manager Salyer argues he was not personally involved in Stanton's complaint of black mold. ECF 53 at 9-10. Specifically, Unit Team Manager Salyer attests he left his position as WCU Unit Team Manager on June 12, 2020, before Stanton ever issued any written notices about black mold. ECF 54-5 at 4-5. Unit Team Manager Salyer provides evidence Stanton submitted written notices regarding black mold in his cell on October 21, 2020, and October 26, 2020, and that these notices were submitted not to him but to his replacement, Unit Team Manager Sonnenberg. *Id.* at 5; ECF 54-9; ECF 54-10.

In his response, Stanton attests he wrote "numerous request forms" to Unit Team Manager Salyer along with the other defendants. ECF 56-1 at 1. But Stanton does not dispute Unit Team Manager Salyer's evidence that these requests were submitted after he left his position at WCU and was no longer responsible for prisoner welfare. Thus, because there is no evidence Unit Team Manager Salyer was personally involved in any constitutional violation, summary judgment is warranted in his favor.

*Captain Lewis*

Captain Lewis argues he was not deliberately indifferent to Stanton's health or safety because he believed the situation with Stanton's cell had been adequately addressed by other staff, including housekeeping. ECF 53 at 15-16. Specifically, Captain Lewis attests to the following facts: Captain Lewis was informed of Stanton's complaint

7

of black mold in his cell in October 2020 and was kept in the loop regarding the complaint. ECF 54-4 at 3. Captain Lewis was informed by email that housekeeping had deep cleaned the cell and cleaned the toilet with bleach but had not found any mold. *Id.* at 3-4. After learning that housekeeping had cleaned Stanton's cell, Captain Lewis heard no further complaints related to black mold. *Id.* at 4.

In his response, Stanton does not dispute any of Captain Lewis' attestations. Thus, because it is undisputed Captain Lewis was informed by staff that Stanton's complaints of black mold were properly addressed, and Captain Lewis had no reason to doubt that information, no reasonable jury could conclude Captain Lewis acted with deliberate indifference to Stanton's health or safety. Summary judgment is warranted in his favor.

*Warden Galipeau*

Stanton is proceeding against Warden Galipeau on two claims: (1) "in his personal capacity for monetary damages for denying the plaintiff adequate sanitary living conditions by keeping him in a cell with black mold, in violation of the Eighth Amendment," and (2) "in his official capacity for permanent injunctive relief related to providing the plaintiff with adequate sanitary living conditions regarding the presence of black mold in his cell, as required by the Eighth Amendment[.]" ECF 33 at 6.

Regarding Stanton's injunctive relief claim, Warden Galipeau argues this claim is now moot because Stanton was released from segregation in June 2021 and is no longer housed in Cell C6-202. ECF 53 at 19-20. In his response, Stanton concedes he is no longer housed in Cell C6-202, but argues this claim is not moot because there is black

8

mold in WCU's showers and other places and he was recently transferred to Cell C5-104, which also contains black mold. ECF 56 at 2. But Stanton is proceeding against Warden Galipeau on a claim that his specific cell – Cell C6-202—contains unsanitary conditions. *See* ECF 16. He is not proceeding on a claim regarding generalized unsanitary conditions in WCU. If Stanton's new circumstances are unsanitary, he must grieve those circumstances and allow the defendants an opportunity to investigate and respond to those claims before filing a new complaint. Because the undisputed evidence shows Stanton's injunctive relief claim against Warden Galipeau is now moot, summary judgment is warranted on this claim.

Regarding Stanton's monetary damages claim, Warden Galipeau does not specifically address this claim in the summary judgment motion. But Warden Galipeau attests that: (1) his role as warden is to manage and oversee the daily operations of WCU's multiple facilities; (2) he is not personally familiar with Stanton's complaint of black mold; (3) he relies on WCU's Unit Team Manager, Housekeeping Supervisor, and other staff to investigate and address all cell sanitation matters; and (4) he does not personally review complaints or grievances from offenders. ECF 54-7 at 2. Because Stanton does not dispute these attestations, the court accepts them as undisputed.

In his response, Stanton provides no evidence Warden Galipeau was involved in responding to his complaint of black mold. He argues he wrote request forms to Warden Galipeau about the black mold in his cell and spoke to him in person (ECF 56 at 3), but it is undisputed Warden Galipeau does not personally review and is not personally involved in responding to cell sanitation matters, but instead relies on

9

WCU's Unit Team Manager, Housekeeping Supervisor, and other staff to investigate and address such complaints. Thus, because the undisputed facts show Warden Galipeau was not involved in responding to Stanton's complaints of black mold in his cell, there is no evidence that Warden Galipeau was deliberately indifferent to Stanton's health or safety. Summary judgment is warranted in his favor on this claim.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 52); AND

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Christopher A. Stanton and to close this case.

SO ORDERED on May 24, 2023

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
